Lamonte BUTLER, Defendant–Below, Appellant,

v.

STATE of Delaware, Plaintiff–Below, Appellee.

No. 220, 2013.

Supreme Court of Delaware.

Submitted: April 23, 2014.
Decided: June 24, 2014.

Nicole M. Walker, Esquire, Santino Ceccotti, Esquire (argued), Office of the Public Defender, Wilmington, Delaware for Appellant.

Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware for Appellee.

Before STRINE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

STRINE, Chief Justice, for the Majority:

Defendant–Below/Appellant Lamonte Butler appeals from a judgment of convictions in the Superior Court of Attempted Robbery First Degree, Assault Second Degree, Possession of a Firearm During the Commission of a Felony, Conspiracy Second Degree, Carrying a Concealed Deadly Weapon, Resisting Arrest, Possession of a Firearm by a Person Prohibited, and misdemeanor drug possession. Butler raises two claims on appeal.

First, Butler contends that his convictions are barred by the Double Jeopardy Clause[1] because the trial judge in a prior proceeding (the "Trial Judge") took a series of improper actions that impelled defense counsel to move for a mistrial. The standard to demonstrate a violation of Double Jeopardy rights when the defendant himself moves for a mistrial is exacting, and requires a defendant to show that the Trial Judge "acted with intent to provoke a mistrial."[2] Recognizing that, defense counsel nonetheless felt that the circumstances were so unusual that she moved to dismiss the case against Butler under that exacting standard.

Second, Butler argues that the Trial Judge abused her discretion by denying his post-trial Motion for Recusal without conducting the analysis required by Los v. Los.[3] Believing that the Trial Judge had engaged in improper behavior, Butler's counsel moved to have the Trial Judge recuse herself so that the motion to dismiss could be decided on a record created before another judge. Given the Trial Judge's behavior, the State joined in the request for recusal but opposed the motion to dismiss. Rather than conduct the Los analysis to determine whether to recuse herself, the Trial Judge denied the motion to dismiss and then denied the request for recusal as moot. Butler was then forced to undergo a new trial before another jury, which began almost two months after his first trial was scheduled, and after which he was convicted.

On direct appeal, Butler claims that the Trial Judge erred, both by not recusing herself from deciding his motion to dismiss and by denying that request on its merits. Butler asks this Court to vacate his conviction because he contends that, on the record that the Trial Judge herself shaped, he has met his burden to show that the Trial Judge took actions intended to provoke defense counsel into seeking a mistrial. At the very least, Butler claims that the motion to dismiss should have been decided in the first instance on a record created before another judge, given that the State and Butler both agreed that the Trial Judge should recuse herself and the Trial Judge never engaged in the required Los analysis.

Because the Trial Judge chose to decide the motion to dismiss, we conclude that

1. See U.S. Const., amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.").

2. Sullins v. State, 930 A.2d 911, 916 (Del. 2007).

3. 595 A.2d 381, 385 (Del.1991).

Butler is entitled to have this Court decide that motion *de novo* on the record that the Trial Judge herself shaped, based on factual inferences reasonably drawn from that record. Forced to make the required factual determinations ourselves on a *de novo* basis, the weight of the evidence leads us to conclude that: (1) the Trial Judge did not intend to preside over Butler's trial before the already empaneled jury, and (2) the Trial Judge took a series of actions intended to ensure that the trial would not take place. For these reasons, Butler's convictions must be reversed.

In so concluding, we note that this appeal presents aberrational circumstances that markedly depart from the serious priority the Superior Court gives to trying felony criminal cases. Indeed, the reality that the actions taken were so different from that normally characteristic of our Superior Court unavoidably informs our resolution of this unusual case. The outcome is regrettable, but it is dictated by the need to respect Butler's constitutional right.

## I. FACTS AND PROCEDURAL HISTORY [4]

Butler was indicted for the robbery and assault of Richard Baldwin in 2012. Because handling criminal trials in a timely manner is the highest priority of the Superior Court, a judge who was then on the civil rotation stepped up to handle Butler's trial, because all the judges on the criminal rotation had other trials scheduled. On the morning of Tuesday, December 4, 2012, that Superior Court judge oversaw the selection of a jury for Butler's trial, consisting of twelve jurors and four alternates. Although the parties agreed that three days would probably be sufficient time for the trial, the jurors were selected based on their availability for a four day trial that would end on Friday, December 7, 2012.

After the jury had been selected, the Superior Court recessed for lunch. The trial was to begin in the afternoon following the recess. During the recess, Butler's trial was reassigned to the Trial Judge, because she was on the criminal rotation and the trial that she had previously been assigned to had pled-out that morning.[5] The Trial Judge was on the criminal rotation, so it was her responsibility to handle Butler's case. Because the Trial Judge's colleague had already selected the jury, the Trial Judge was in a position to keep the trial on schedule and start immediately on the afternoon of December 4, 2012. But that did not happen.

Instead, the Trial Judge held a conference in her chambers without a court reporter. Although a prosecutor had requested a court reporter, he was told that no court reporter was needed because the Trial Judge only wished to discuss scheduling.[6] But that turned out not to be so. At the conference, the Trial Judge pressed

---

4. Our discussion of the facts is based on the record shaped by the Trial Judge's own procedural choices. Because the Trial Judge chose to conduct several colloquies with counsel off-the-record, during which important issues were discussed and decided, we rely heavily upon the affidavits filed by two of the trial prosecutors who were present at those hearings. We also rely on the portions of the proceedings that were transcribed. Because the Trial Judge decided the motion to dismiss herself on a paper record and because the

motion to dismiss involved the resolution of a factual question about the Trial Judge's motivation for her actions, we are required to review the record independently and make the determinations necessary to resolve the case. Our rendition of the facts is thus based on our *de novo* review of the record.

5. Appellant's Op. Br. Appendix at A91–92.

6. Appellant's Op. Br. Appendix at A92.

the parties to resolve the case by a plea, even suggesting that Butler plead to Robbery Second Degree and Possession of a Firearm During the Commission of a Felony.[7] The prosecutors declined,[8] and defense counsel explained that Butler "was unlikely to accept any plea offer." [9]

The Trial Judge then informed the parties that she had several unspecified scheduling conflicts,[10] that she would preside over the trial for only a few hours each day, and that because of that limited schedule, the trial would likely need to extend until the following Monday. Specifically, the Trial Judge gave the parties an odd patchwork schedule, with the Trial Judge declaring herself to be available only as follows:

- Wednesday, December 5, 2012: The judge had a conflict in the morning and could not start until 10:30 A.M.

She proposed that the trial go to noon and then break for lunch before continuing until 4:30 P.M. (5 hours)

- Thursday, December 6, 2012: The judge proposed trying the case from 9:30 A.M. until 11:00 A.M. and from 2:00 pm until 3:30 P.M. (3 hours)

- Friday December 7, 2012: The judge proposed trying the case from 11:00 A.M. until 12:30 P.M. and from 1:30 P.M. until 4:30 P.M. (4.5 hours) [11]

Given the sparse trial hours she had offered, the Trial Judge then announced that she would conduct additional *voir dire* to ascertain the jury's availability to serve until Monday, if necessary. The State objected, but defense counsel did not.[12] The Trial Judge then conducted additional *voir dire* of the jury, asking the seated twelve jurors and four alternates three additional

7. Appellant's Op. Br. Appendix at A92 ("[The Trial Judge] then pressed the State on the plea offer. Her Honor asked, 'What's the plea offer?' We quickly responded that all previous offers had been revoked and that both sides were ready for trial. [Defense counsel] concurred. [The Trial Judge] continued to press, asking what the prior plea offer was. It was explained that ... we at one time extended a Robbery 2nd, PFDCF and Conspiracy 2nd plea offer. That offer was rejected and no longer available."); *id.* at A97 ("[The Trial Judge] also pressed the state and defense on the plea offer. When [the prosecutor] explained that the original order to Robbery 2nd was no longer on the table, she pressed him as to why.").

8. Appellant's Op. Br. Appendix at A92–93 ("Her Honor pressed us as to why the offer is revoked. I explained that it is the day of trial and the prior plea offers were revoked. I said, 'It's the day of trial and I can't offer the same or better plea.' Her Honor corrected me and stated that I can offer a plea, as her case earlier that day pled. I apologized and clarified that I would not offer a plea. Her Honor then stated that the State didn't have to extend a worse plea, given the reluctance of our witness.... It was suggested that the parties resolve the case with a Robbery 2nd

and PFDCF plea, and let the Court take care of it. Both the State and defense stated that we were ready for trial and there would be no plea. I attempted to explain the facts of our case, but was told by Her Honor that she did not ask nor did she want to hear about facts.").

9. Appellant's Op. Br. Appendix at A93 ("This caused the judge to ask if a colloquy was held with the defendant about the plea. Again, both the State and defense said we were past any plea and we wanted to try the case, but [the Trial Judge] said we needed to do another colloquy to see if he would entertain a plea. Defense counsel stated that the defendant was unlikely to accept any plea offer."); *id.* at A97 ("[Defense counsel] made it clear that the defendant was unlikely to accept any plea offer.").

10. *See, e.g.,* Oral Argument at 8:15–10:00, *available at* http://courts.delaware.gov/ supreme/oralargs/video/2014-04-23_220,_ 2013_Butler_v_State_of_Delaware.mp4; *id.* at 19:15–20:45; *id.* at 36:30–39:15.

11. Appellant's Op. Br. Appendix at A93, A97.

12. Appellant's Op. Br. Appendix at A93.

questions. The first question related to the scheduling issues arising from the limited hours the Trial Judge was offering for trial. The second and third were questions that the Trial Judge told the parties she always asked.[13] Those questions were as follows:

It is now estimated that the trial will last until Monday. If anyone cannot serve through Monday, please raise your hand. Have you, a relative, or a close friend ever assisted or cooperated with the police, whether Attorney General— or the Attorney General's Office in a civil or criminal investigation? If you are a retiree, please raise your hand and come forward when directed by prothonotary so that you-so that we may find out about your previous employment.[14]

The questions the Trial Judge asked that were unrelated to scheduling are not uncommon when selecting a jury in the first instance, but here those questions were asked after the jury was sworn and without the consent of the parties. Both parties were content with the *voir dire* that had previously been conducted by the Trial Judge's colleague, and they opposed additional *voir dire*. Despite the parties' objection and despite knowing the jury had already been sworn, the Trial Judge proceeded to ask the additional *voir dire* questions unrelated to scheduling. Notably, the Trial Judge did that only after asking Butler if he wanted a trial, despite already having been told by Butler's counsel that prior plea negotiations had failed.

Five jurors came forward in response to these additional *voir dire* questions. The first, Juror # 1, needed a note to furnish her employer, which the Trial Judge agreed to provide. Juror # 1 was not excused. The second, Juror # 7, said that he would be traveling out of the country starting on Monday afternoon. The Trial Judge excused him. At this point, defense counsel stood up and the following colloquy transpired:

DEFENSE COUNSEL: Your Honor.

THE COURT: What's the problem? ...

DEFENSE COUNSEL: If we don't go through Monday—

THE COURT: Do you really want a juror that's going to rush things?

DEFENSE COUNSEL: No.[15]

The third juror to come forward, Juror # 15, said that he was a retired research scientist and that nothing about his employment would make it difficult for him to serve. He was not excused. The fourth, Juror # 8, said that he was retired from Delmarva Power & Light Co., where he had worked in collections. He stated that knives and guns had been pointed at him during the course of his employment. The Trial Judge asked Juror # 8 whether, having been a victim of violence, he could be fair and impartial if someone was accused of violence. Juror # 8 stated, "I can be fair about it, yeah. I have no problem, whatsoever."[16] After Juror # 8 returned to his seat, the Trial Judge engaged in the following colloquy with defense counsel and the prosecutor:

THE COURT: Personally, I'm not convinced.

PROSECUTOR: It's our position he answered all the questions right, your Honor.

THE COURT: But there was a hesitation and the body language which was speaking differently from the words he

---

13. Appellant's Op. Br. Appendix at A93–94.

14. Appellant's Op. Br. Appendix at A36 (as read by the Prothonotary).

15. Appellant's Op. Br. Appendix at A37.

16. Appellant's Op. Br. Appendix at A38.

was saying. If you want me to excuse him I will. It's up to Counsel. (Brief pause.) Let's go on with somebody else and, then, you can decide.

DEFENSE COUNSEL: Okay.[17]

The fifth juror to come forward, Juror # 16, was immediately excused by the Trial Judge without further questioning or input from the parties after he said, "I have a hearing problem. When you're speaking, if not in a microphone, I can't hear you."[18]

Conversations between the attorneys and the Trial Judge, some of which were again conducted off-the-record, indicated that the Trial Judge intended to excuse two additional jurors. One was Juror # 8, the retired collections agent for Delmarva Power. The other was Juror # 11, after the prosecutor revealed that Juror # 11 had out-of-state arrests that he had not disclosed during the original *voir dire,* even though those charges had been dismissed and the State did not believe there was a basis for excusing him. The net result of these excusals would have been a trial without any alternate jurors. There is no record of any objection to the Trial Judge's *sua sponte* decision to excuse those jurors, but then again the Trial Judge ruled without soliciting the parties' views.

In an effort to recreate the off-the-record portion of the conference, one of the prosecutors stated in an affidavit:

> While on the record in the conference room, counsel and the judge were discussing these events when Her Honor suddenly waved her arm in front of the court reporter. The Court reporter then went off the record. *While off the record, Her Honor indicated that she was going to excuse 4 jurors, leaving us with 12. I then brought up the issue of double jeopardy. The Judge responded to the issue by asking if we would now plea the case out and asked what we are going to do now.* I answered that the jury had been sworn, and as such jeopardy has attached. Thus, the State is not making any application. Defense counsel would have to make an application for a mistrial given that the judge is going to excuse 4 or 5 of our jurors. *Defense counsel explained that while she wants to go forward now, she does not want to try the case with 12 jurors and no alternates and was wrestling with the idea of asking for a mistrial. . . . While defense counsel was speaking, the Judge looked at [one of the deputy attorneys general] and mouthed the word "plea."*[19]

The other prosecutor gave a similar version of the conference in an affidavit:

> While on the record in the conference room, counsel and the judge were discussing these events when [the Trial Judge] suddenly waved her arm in front of the court reporter to go off the record. It was so abrupt that everyone paused and the reporter asked to clarify if it was off the record. *While off the record, conversations took place that led both the State and the defense to believe that only 12 jurors would remain.* These conversations began to turn toward a mistrial motion at which point [one of the deputy attorneys general] brought up the issue of double jeopardy. [Defense counsel] explained that while she wants to go forward now, she does not want to try the case with 12 jurors and no alternates. . . . While it was raised that we don't have to have 12

---

17. *Id.*

18. *Id.*

19. Appellant's Op. Br. Appendix at A94–95 (emphasis added).

jurors, [the judge] emphatically stated, "We will have at least 12 jurors."... [One of the deputy attorneys general] raised a potential issue we discovered after jury selection regarding juror # 10 [sic]. Specifically, he has out-of-state arrests for felony thefts in PA. *After approximately 5–7 minutes of off-the-record discussion, we eventually went back on the record and [defense counsel] requested a mistrial. While back on the record, [the judge] was inaudibly mouthing a word to me; that appeared to be the word, "Plea."* [20]

The on-the-record colloquy regarding a mistrial went as follows:

DEFENSE COUNSEL: *We're going to have no alternates, that's the problem. And we're looking at five-four, maybe a fifth day with no alternates. I'm not doing this twice, I'm not doing it with less than 12. I really want to start right now and I don't know we can and I'm not—[the prosecutor] and I have been preparing for this since March.*

PROSECUTOR 1: Yes.

DEFENSE COUNSEL: *We had this ready to go mid October, we had this ready to go today.*

PROSECUTOR 1: The jury was sworn; right?

DEFENSE COUNSEL: So if I'm looking at a mistrial, you can't rebring it?

PROSECUTOR 1: Well, I think we can but I'm asking—I don't want to engage in motion practice afterwards, because I agree with everything you said, you know what I mean. It's your call.

(Brief pause.)

DEFENSE COUNSEL: Your Honor, given the fact that we had Juror No. 8 ... come forward on Your Honor's question about retirees and he used to do collections, which, frankly, made him

sound like somebody who broke knee caps for Delmarva Power and, then, he started talking about things that had happened to him with various weapons, in which he was a victim.

And he didn't really have a great excuse for why he didn't come forward the first time that the two questions were asked about have you ever been a victim, or at least one. And, then, we had Alternate 4 who couldn't hear and Alternate 3 was fine.... *But we now have no alternates after further questioning. Recognizing that the jury has been sworn, the defense counsel has to ask for a mistrial, I mean a new date, and a new date soon.*

....

PROSECUTOR 2: *And the only other issue*, which I think is being remedied here is, *the jury was, in fact, sworn; so, the issue of double jeopardy having attached at this point in time—*

DEFENSE COUNSEL: *Right. But since—I think that it becomes a nonissue because the defense is asking for the mistrial because I need a full compliment* [sic] *of jurors, for lack of a better word.*

PROSECUTOR 1: And to that point, which is well taken, we have already lost Juror No. 7, which Your Honor excused because he brought up travel issues on Monday; we have excused Alternate No. 4, who did not come forward previously with hearing issues; and, now, we have the issues with Juror No. 8 that [defense counsel] laid out and Juror No. 11 that the State laid out, and Juror No. 1 was ambiguous and confusing at best, in which she came up to Your Honor about some opening—

THE COURT: ... *All right, based on all the reasons given, I'm going to grant*

*a mistrial without prejudice.* We need to set a new date.[21]

After the mistrial was granted upon defense counsel's request, the entire jury was excused. On January 2, 2013, Butler changed the position on double jeopardy that defense counsel had taken in the midst of the fast-moving events of Tuesday, December 4, 2012. After defense counsel had more time to reflect on those events, Butler moved to dismiss the case, arguing that the Trial Judge had taken action intended to provoke defense counsel to move for a mistrial. Butler also filed a motion, through the same counsel, requesting that the Trial Judge recuse herself from deciding the motion to dismiss.[22] The State opposed the motion to dismiss, but also filed a motion requesting that the Trial Judge recuse herself.[23] On January 28, 2013, the Trial Judge denied Butler's motion to dismiss,[24] and then denied Butler's recusal motion as moot.[25] The Trial Judge made no reference to, or ruling on, the State's recusal motion.

On January 29, 2013, eight weeks after his original trial date, Butler's new trial commenced before a different Superior Court judge and jury. At the beginning of the trial, defense counsel objected to the trial "for all the reasons set forth in the motion to dismiss previously."[26] After a four-day trial, the jury found Butler guilty on all counts but one. This appeal followed.

## II. DISCUSSION

Butler argues that Trial Judge erred by denying his motion to dismiss. Butler contends that the Trial Judge goaded defense counsel into requesting a mistrial through her unusual and inappropriate actions. Butler further contends that the Trial Judge's failure to conduct the required *Los* analysis before deciding not to recuse herself was reversible error that undermined the public's confidence in the judicial process.

The State responds that the Trial Judge correctly denied Butler's motion to dismiss because defense counsel voluntarily moved for a mistrial, thereby consenting to a second trial.[27] Although the State concedes that the Trial Judge erred by failing to conduct the *Los* analysis, the State argues that this error does not require the reversal of Butler's conviction before a different judge and jury.

 This Court reviews "claims alleging an infringement of a constitutionally protected right, including the right not to be subjected to double jeopardy, *de novo.*" [28] We review the Trial Judge's decision whether or not to recuse herself for an abuse of discretion.[29]

---

21. Appellant's Op. Br. Appendix at A39 (emphasis added).

22. Appellant's Op. Br. Appendix at A84.

23. Appellant's Op. Br. Appendix at A86–89.

24. Appellant's Op. Br. Ex. B.

25. Appellant's Op. Br. Ex. C.

26. Appellant's Op. Br. Appendix at A100.

27. The State also argues waiver, based on the fact that Butler himself moved for a mistrial. But waiver is not a doctrine that applies in this context. Rather, if a defendant shows that his counsel was goaded into moving for a mistrial, then he has necessarily also shown that his rights were not waived.

28. *Sullins v. State*, 930 A.2d 911, 915 (Del. 2007) (citing *Keyser v. State*, 893 A.2d 956, 961 (Del.2006)).

29. *Los v. Los*, 595 A.2d 381, 385 (Del.1991) (citing *Weber v. State*, 547 A.2d 948, 952 (Del. 1988)).

## A. *The Double Jeopardy Claim*

■ The Fifth Amendment to the United States Constitution protects a defendant from being put in jeopardy twice for the same offense.[30] "At the heart of the double jeopardy clause is a concern for protecting an individual from harassment by the government through its multiple attempts to bring the 'same' charge against a defendant for conduct arising out of the same factual situation."[31] In a jury trial, jeopardy attaches when the jury is empaneled and sworn.[32]

■ A criminal defendant owns "the valued right to have his trial completed by a particular tribunal. The declaration of a mistrial implicates that right."[33] But the "double jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment."[34] Rather, "[a] motion by the defendant for a mistrial, which is granted, generally removes any barrier to reprose-cution."[35] That is because by filing a motion for a mistrial, the defendant is deemed to have consented to the second trial.[36]

■ But there is a "narrow exception" to the rule that a defendant's mistrial motion precludes a finding of double jeopardy.[37] Where a defendant's motion for a mistrial was the product of "judicial or prosecutorial impropriety" that forced the defendant to file the motion for a mistrial, then "there has been no consent and the Double Jeopardy Clause bars retrial."[38] The defendant cannot be found to have consented to the new trial, because the impropriety was "intended to 'goad' the defendant into moving for a mistrial."[39] As a result, the defendant may raise a double jeopardy claim to bar a second trial, even after having succeeded in aborting the first trial on his own motion.[40]

■ A defendant bears a heavy burden of demonstrating judicial impropriety sufficient to show that the judge "*intended* to provoke a mistrial."[41] That

30. U.S. CONST, amend. V.

31. *Tarr v. State*, 486 A.2d 672, 674 (Del.1984) (citing *State v. Heitter*, 203 A.2d 69, 71 (Del. 1964)).

32. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

33. *Sullins*, 930 A.2d at 915 (footnote and internal quotation mark omitted) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)).

34. *Wade*, 336 U.S. at 688–89, 69 S.Ct. 834.

35. *Sullins*, 930 A.2d at 916 (quoting *Bailey v. State*, 521 A.2d 1069, 1075 (Del.1987)).

36. *Cf. Wade*, 336 U.S. at 688–89, 69 S.Ct. 834 (explaining that a rule allowing a defendant to escape prosecution on his or her own mistrial motion "would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double jeopardy prohibition is aimed").

37. *Sudler v. State*, 611 A.2d 945, 948 (Del. 1992).

38. *Sullins*, 930 A.2d at 916 (quoting *Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir. 1996)).

39. *Sudler*, 611 A.2d at 948 (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)).

40. *Id.* at 948–49 (quoting *Kennedy*, 456 U.S. at 676, 102 S.Ct. 2083).

41. *Sullins*, 930 A.2d at 916 (quoting *Bailey v. State*, 521 A.2d 1069, 1078 (Del.1987)); *see also United States v. Borromeo*, 954 F.2d 245, 247 (4th Cir.1992) (providing that the defendant has the burden of proving intentional provocation of the defense to move for a mistrial). The same standard is also applied for allegations of goading resulting from prosecutorial impropriety. *See Sullins*, 930 A.2d at 916.

is an "extremely exacting standard."[42] The fact that a judge committed errors will not, without more, establish that the judge intentionally goaded the defendant into requesting a mistrial.[43] Rather, the errors and actions of the trial judge must demonstrate an intention to deprive the defendant of his right to a trial by a particular jury.[44] To evaluate an alleged claim of goading, we must scrutinize the objective facts and circumstances.[45] The reason for that is plain: a trial judge or prosecutor is unlikely to ever confess to having the intent to deprive a defendant of his right to trial before the empaneled jury. As a result, the requisite intent must necessarily be inferred from the objective facts and circumstances.

### B. *The Complained–Of Conduct*

Butler argues that several improper actions taken by the Trial Judge prove that she was intent on not presiding over his trial before the empaneled jury. Butler contends that those improper actions had the cumulative effect of goading him into requesting a mistrial. These actions include: (1) holding off-the-record discussions, (2) reopening *voir dire* to eliminate additional jurors, (3) exerting pressure on the parties to resolve the case by a plea, (4) limiting her availability for trial so that the trial would proceed on a sparse, inefficient, and sporadic schedule, and (5) pressuring counsel to request a mistrial. We next address each of these actions to determine whether the conduct was error or was otherwise improper. After doing that, we consider the separate actions collectively to determine whether Butler's motion to dismiss was denied erroneously.

### 1. Holding Off–the–Record Discussions

█ Butler's first claim of error relates to unrecorded conferences, the first of which occurred in a pretrial conference after the case was reassigned. The Trial Judge summoned the prosecutors and defense counsel to her chambers. The State requested a court reporter, but was told that because only scheduling matters would be discussed no court reporter was necessary. Nevertheless, the Trial Judge proceeded to ask counsel about substantive issues, including a stipulation regarding custody of evidence, proposed jury instruc-

---

**42.** *Sullins,* 930 A.2d at 916 (quoting *Earnest,* 87 F.3d at 1130).

**43.** *See United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) ("[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."); *People v. Palmisano,* 124 Ill.App.3d 770, 80 Ill.Dec. 164, 464 N.E.2d 1147, 1150 (1984) (holding that trial judge erred but the judge's conduct "did not constitute judicial overreaching" that would otherwise bar retrial); *Commonwealth v. Ellis,* 432 746, 752, 432 Mass. 746, 739 N.E.2d 1107, 1113 (2000) ("Absent evidence that the judge acted in bad faith, alleged judicial errors giving rise to a mistrial do not support a claim of double

jeopardy."), *overruled on other grounds by Commonwealth v. Britt,* 465 Mass. 87, 987 N.E.2d 558 (2013); Sheldon R. Shapiro, *Double Jeopardy as Bar to Retrial After Grant of Defendant's Motion for Mistrial,* 98 A.L.R.3d 997, § 6 (1980) (citing cases that collectively held that "even if the trial judge's conduct had been improper or erroneous and had been responsible for creating a situation which led to the granting of the defendant's motion for a mistrial, such conduct did not constitute judicial overreaching and did not bar the defendant's retrial").

**44.** *See Kennedy,* 456 U.S. at 675–76, 102 S.Ct. 2083.

**45.** *See Bailey,* 521 A.2d at 1078 (conducting "[a]n examination of the objective facts and circumstances" to determine whether the prosecutor intentionally caused a mistrial).

tions, and the potential for a plea agreement. A second off-the-record discussion occurred when the parties held a sidebar conference to discuss the supplemental *voir dire*. The Trial Judge told the court reporter to go off the record, yet continued to discuss the merits of the case.

 This Court has repeatedly held that *"all sidebar conferences,* except those involving non-substantive issues, *must be recorded."* [46] The Superior Court's Criminal Rule 26.1 mandates that same result.[47] "This requirement allows no room for discretion." [48] The trial court is responsible for ensuring that a record of the trial is made. But the Trial Judge in this case did not do so. That was judicial error compounded by repetition.

### 2. Reopening of *Voir Dire*

Butler next contends that it was error for Trial Judge to reopen *voir dire* and consequently express her intent to dismiss four of the empaneled jurors. The State concedes that additional *voir dire* is not customary, but argues that it was permissible in this case because the Trial Judge was substituted after another judge had presided over the selection of Butler's jury.

 As this Court has held, the "nature and extent of any *voir dire* examination rest within the sound discretion of the trial judge." [49] The exercise of that discretion, however, is limited "by constitutional requirements and 'the essential demands of fairness.' " [50] Generally, additional *voir dire* after the jury is selected requires some new information or event. Here, additional *voir dire* to verify that the jurors could still serve during a different trial schedule was appropriate and not an abuse of the Trial Judge's discretion. Scheduling issues often arise in a case, which the judge may be required to address with the jury.

 But the *sua sponte* reopening of *voir dire* to ask general questions after the jury is sworn, in the absence of any new information or event creating a reason to do so, is far more problematic. Neither the State nor Butler requested supplemental *voir dire,* nor did any party contend that the first judge failed to conduct adequate *voir dire* of the venire. To the contrary, both parties opposed reopening *voir dire* of the jury that was already sworn. And, because the Trial Judge was offering so few trial hours, one might think that she would have wanted to begin the trial as soon as possible that Tuesday afternoon, as the parties expected. Instead, the Trial Judge conducted additional *voir dire* that provided plausible grounds for certain jurors to be excused, and the record (such as it is) suggests that the Trial Judge was quick to excuse jurors as soon as these grounds emerged. The result would leave Butler with twelve jurors and

**46.** *Sudler v. State,* 611 A.2d 945, 947 (Del. 1992) (emphasis added) (citing *In re Butler,* 609 A.2d 1080, 1082–83 n. 3 (Del.1992); *Ross v. State,* 482 A.2d 727, 734–35 (Del.1984)).

**47.** *See* Super. Ct.Crim. R. 26.1 ("All sidebar conferences and chambers conferences during trial shall be recorded unless the trial judge determines, in advance, that neither evidentiary nor substantive issues are involved.").

**48.** *Sudler,* 611 A.2d at 947.

**49.** *Diaz v. State,* 743 A.2d 1166, 1176 (Del. 1999) (footnote omitted) (citing *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *Parson v. State,* 275 A.2d 777, 780 (Del.1971)).

**50.** *Ortiz v. State,* 869 A.2d 285, 292 (Del.2005) (footnote omitted) (quoting *Parson,* 275 A.2d at 780–84) (citing *Rosales–Lopez v. United States,* 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981)).

no alternates to hear his case. Because there was no basis in the record to suggest a need to reopen *voir dire* beyond scheduling issues and because the parties did not agree that additional general *voir dire* should occur, it was an abuse of discretion for the Trial Judge to conduct another generalized *voir dire* of an already empaneled jury.

## 3. Pressuring The Parties To Resolve The Case By A Plea

██ Butler's next claim of error is based on the Trial Judge having discussed the possibility of a plea agreement on two separate occasions. The first instance occurred in chambers at the first unrecorded pretrial conference, when the Trial Judge pressured the parties resolve the case through a specific plea agreement. The second instance occurred in open court, when the Trial Judge inaudibly mouthed the word "plea."

██ As arbiters of the criminal justice system, trial judges are required to be impartial and ensure that "the trial is conducted with solicitude for the essential rights of the accused."[51] "Our adversarial system of justice assumes that the judge is a neutral, detached, impartial arbiter and not a partner with the state's prosecutorial arm seeking to have the defendant adjudicated guilty."[52] The *ABA Standards for Criminal Justice* provide that a trial judge "should not through *word or demeanor,*

either directly or indirectly, communicate to the defendant or defense counsel that *a plea agreement should be accepted or that a guilty plea should be entered.*"[53] The Standards further admonish:

A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed. Discussions relating to plea negotiations at which the judge is present need not be recorded verbatim, so long as an appropriate record is made at the earliest opportunity. For good cause, the judge may order the record or transcript of any such discussions to be sealed.[54]

Here, the Trial Judge directly communicated with the parties and suggested that a specific plea agreement be reached on Robbery Second Degree and Possession of a Firearm During the Commission of a Felony. Throughout the fast-moving course of these events, the Trial Judge continued to express her desire to have the case resolved by a plea. In fact, when the subject of whether to request a mistrial and who should seek it was being discussed, the Trial Judge inaudibly mouthed the word "plea," presumably to prevent an appropriate record of her actions from be-

51. *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (quoting *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

52. Richard Klein, *Due Process Denied: Judicial Coercion in the Plea Bargaining Process*, 32 Hofstra L.Rev. 1349, 1419–20 (2004).

53. Criminal Justice Standards Committee, *ABA Standards for Criminal Justice: Pleas of Guilty* Std. 14–3.3(c), at 9 (3d ed.1999) (emphasis added). This Court often relies on the

*ABA Standards for Criminal Justice* for issues involving pleas of guilty and other matters. *See, e.g., Gregory v. State*, 31 A.3d 76 (Del. 2011) (prosecutorial misconduct); *MacDonald v. State*, 778 A.2d 1064, 1071–72 (Del. 2001) (guilty pleas); *Lewis v. State*, 757 A.2d 709, 713 (Del.2000) (defense function); *Brokenbrough v. State*, 522 A.2d 851, 856 (Del. 1987) (function of prosecution and defense).

54. *ABA Standards, supra*, Std. 14–3.3(c), at 9–10.

ing made. By repeatedly pressuring the parties by word and demeanor to enter a plea agreement, the Trial Judge erred.

### 4. Limiting the Trial Schedule

Butler also claims that the Trial Judge's scheduling changes evidence her desire to eliminate Butler's case from her trial docket. During the first unrecorded pretrial conference, the Trial Judge explained that she had several unspecified scheduling conflicts that would result in a patchwork schedule for the trial and that would likely extend the trial into the following week.

The record that the Trial Judge created nowhere indicates why she gave the parties such a sparse and sporadic trial schedule. As a matter of respect for the court, the parties were hardly in a position to inquire when the Trial Judge announced that she was unavailable. But judges are more likely to surface the reason for their unavailability when that reason involves other judicial duties. They say things like: "I have to take a break at eleven on Thursday, because I have a VOP calendar. On Friday, I have a brief motion to suppress that I will move to lunch if I can, so we can keep the trial moving." The Trial Judge here did not identify any judicial matter that would explain any portion of the time that she was unavailable. There is thus no basis in the record to presume that judicial matters were the reason for her unavailability.

The Trial Judge was assigned to the criminal rotation for the week that Butler's trial was scheduled, and she therefore was expected to be available to handle criminal trials. In fact, the Trial Judge was scheduled to preside over another criminal trial, which is why a different judge stepped up to handle Butler's trial. Thus, if there were room for any presumption on this

record, the presumption would be that the plea in the original case freed up the Trial Judge to devote substantial, full-time effort to Butler's trial.[55] In addition, it is difficult to square the patchiness of the offered schedule with the notion that the schedule was occasioned by other judicial duties. Regrettable as it is to have to acknowledge, the uncomfortable reality is that a fair inference arises that the Trial Judge had nonjudicial matters that she wished to attend to during that week and that Butler's trial inconveniently threatened to intrude on those matters. And there is no record evidence to rebut that inference.

Lastly, the Trial Judge decided Butler's motion to dismiss without recusing herself. Addressing that motion afforded the Trial Judge a full opportunity to explain what other judicial duties necessitated giving the parties such a patchwork, scarce, and sporadic trial schedule. But the Trial Judge did not do so. That failure is disquieting, given that the Trial Judge was on the criminal rotation and had been scheduled to handle another trial that pled-out.

### 5. Lack of Alternate Jurors

Finally, Butler points to the Trial Judge's conduct immediately before defense counsel moved for a mistrial as further evidence of the Trial Judge's intent to provoke a mistrial. In a brief period, the Trial Judge signaled her intent to excuse four jurors. Butler's counsel did not object to the excusals on the merits but voiced a concern that there would no longer be any alternate jurors. Defense counsel further explained that she did not want to try the case twice or try the case without a full complement of jurors. Those were the in-the-moment reasons that de-

---

55. *See generally* Delaware Judges' Code Of Judicial Conduct R. 2.1 & 2.5 cmt. (2008), *available at* http://courts.delaware.gov/forms/download.aspx?id=39408.

fense counsel said motivated her request for a mistrial.

We recognize that a defendant does not have a constitutional right to alternate jurors.[56] But, given the odd conduct of the Trial Judge and the inconvenient schedule the Trial Judge would be forcing upon the parties and the jury, defense counsel had a reasonable basis to fear that other jurors might be later excused by the Trial Judge. Equally important, defense counsel was responding to a blur of unforeseen events that she had no reason to have anticipated, in particular the Trial Judge's spontaneous decision to conduct a new *voir dire* of the jury when defense counsel was expecting to begin the trial.

## 6. The Inference That Arises From The Collective Errors And Actions Of The Trial Judge

The State is admirably candid in its papers. The State concedes that the Trial Judge's actions were improper in multiple respects. But the State then argues that those errors do not prove that the Trial Judge intended to deprive Butler of his right to a trial before the empaneled jury. Rather, the State argues that the Trial Judge's actions only show a judge bent on doing things her own particular way, whether in pressing the parties to plead the case out, in conducting a new *voir dire*, or in trying cases on her own preferred schedule. In so arguing, the State emphasizes that the standard to apply a double jeopardy bar when defense counsel moves for a mistrial is rightly a high one.[57]

But that standard is not, and cannot be, so high that it can never be met. A judge who is intent on not having a trial proceed before an empaneled jury is unlikely to confess that intention. Rather, the requisite intent must be inferred from the objective facts and circumstances.[58] The State analyzes each of the Trial Judge's errors in isolation, rather than collectively. But we cannot help but recognize what all of the errors had in common: their tendency to make it less likely that Butler would be tried before the already empaneled jury. Taken together, the sum total of the Trial Judge's conduct is so strikingly different from that normally characteristic of her judicial colleagues that it reasonably supports the inference that she was intent on not handling a criminal trial that week and therefore engaged in conduct having the logical and intended effect of causing defense counsel to request a mistrial. When the Trial Judge was assigned Butler's case, she was on the criminal rotation and should have been able to start his trial immediately on the afternoon of December 4, 2012.

Instead of proceeding in that fashion, the Trial Judge:

(1) held a conference without a court reporter after the parties had been

---

56. *Cf. Dirring v. United States*, 370 F.2d 862, 864 (1st Cir.1967) ("Under [Federal] Rule 24(c) the selection of alternate jurors is entirely discretionary with the court. Neither party is entitled to alternate jurors as a matter of right."); *Boisen v. United States*, 181 F.Supp. 349, 350 (S.D.N.Y.1960) (holding that a trial judge under Rule 24(c) of the Federal Rules of Criminal Procedure has discretion to empanel alternate jurors "and a failure to provide alternate jurors does not deprive a defendant of any rights").

57. *Sullins v. State*, 930 A.2d 911, 916 (Del. 2007).

58. *See Bailey v. State*, 521 A.2d 1069, 1078 (Del.1987) (conducting "[a]n examination of the objective facts and circumstances" to determine whether the prosecutor intentionally caused a mistrial).

assured that the conference was only about scheduling;

(2) put pressure on the parties during that conference to resolve the case by a plea;

(3) when it became apparent that there would not be a plea, told the parties that they would have a sparse, sporadic, inconvenient, and odd trial schedule that not only would leave jurors bored and restless and on an irregular schedule, but also would make it possible that the trial would extend into the next week;

(4) convened the jury and conducted additional *voir dire* that did not merely explore whether jurors could serve into the next week but also constituted a reopening of *voir dire* after the jury had been sworn;

(5) conducted that additional *voir dire* without the consent of the parties;

(6) immediately excused one of the jurors solely because he indicated that he needed the parties to use the microphone because he had hearing issues;

(7) went off the record again during the additional *voir dire* and made statements that led the parties to believe that four jurors would be excused, leaving no alternates;

(8) raised the issue of a mistrial while off the record and indicated that unless defense counsel requested the mistrial, double jeopardy would attach; and

(9) suggested again that the case should be pled out by visibly mouthing the word "plea."

We do not believe this confluence of actions can be ignored or parsed as if they were unrelated to each other.

Nor are we comfortable with the difficult position in which defense counsel was put. Because the Trial Judge's unusual actions occurred in rapid succession, defense counsel was forced to react to them without any opportunity for deliberation or consultation with colleagues from her office. Although defense counsel moved for a mistrial, defense counsel had a reasonable basis to believe that the Trial Judge was determined not to try the case, that the Trial Judge would be unhappy if she was forced to do so, and that—because of the Trial Judge's mindset—the dismissal of additional jurors was possible, which would result in a mistrial anyway. Had defense counsel proceeded to try the case and a mistrial occurred, defense counsel would have shown her strategy to the prosecution. Furthermore, the Trial Judge's inappropriate behavior, combined with the sporadic trial schedule, gave defense counsel reasonable cause to fear that whichever jury was seated would be in a less than an ideal frame of mind, because the jury would be subjected to an odd schedule, with lots of down time and irregular hours.

Underscoring the difficulty of faulting defense counsel for seeking a mistrial is that this is the rare case where both the State and defense counsel agree that the Trial Judge committed multiple errors that were so extensive as to require her to recuse herself from deciding Butler's motion to dismiss the case.[59] Nonetheless,

---

**59.** We respect the dissent's concern that defense counsel is being relieved of having specifically said that if she moved for a mistrial, then double jeopardy would be a "non-issue." Where we differ is that we cannot fault defense counsel for reacting to a bewildering and unexpected set of circumstances in the way she did. Defense counsel arrived expecting to start a trial, not to confront a new trial judge who, among other things, continually pressured the parties to plea out the case, gave the parties a sparse and inconvenient

the Trial Judge did not recuse herself and ruled on the merits of the motion to dismiss without applying the required *Los* analysis,[60] even though the motion was premised on an argument that she had engaged in improper conduct.

The Trial Judge's failure to recuse herself is important, because it left us, as a reviewing court, with an inadequate record. Having declined to recuse herself and instead having resolved Butler's motion to dismiss, the Trial Judge compromised Butler's right to make an evidentiary record. That, in turn, gives us no practical recourse other than to decide the motion *de novo* on the record the Trial Judge herself created.[61] The Trial Judge had the opportunity to clarify the record when deciding the motion to dismiss, but she did not. The Trial Judge's decision failed to identify any other judicial duties that would explain the sporadic trial schedule she forced on the parties and the jury.

Required now to make an essentially factual determination based on the record the Trial Judge herself created, we reluctantly find that Butler has established that the Trial Judge intended to take action that would result in Butler not having a trial before the jury that had already been empaneled. The Trial Judge's improper actions, taken together, goaded defense counsel into doing what the Trial Judge wanted—asking for a mistrial that would cause Butler's trial to be rescheduled. The fact that defense counsel asked for a mistrial does not preclude a finding that defense counsel was goaded into doing so. The point of the inquiry is to determine whether a trial judge has taken action intended to cause defense counsel to move for a mistrial. That the Trial Judge's intention was not grounded in any personal animus toward Butler, but rather in an apparent desire to be relieved of the need to preside over a trial that week, does not justify violating Butler's constitutional right.

In so concluding, we again emphasize how markedly different the Trial Judge's behavior on the afternoon of December 4, 2012 was from that which is typical of our Superior Court. We are aware that being a judge on a court with a difficult and challenging caseload like our Superior Court is demanding. Because judges are

schedule, conducted a new generalized *voir dire,* and indicated an intent to leave the jury with no alternates. It is understandable that defense counsel did not have the case law governing this uncommon context, such as *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) or *Sullins v. State,* 930 A.2d 911 (Del.2007), at her immediate command. In most lives, there come situations when one leaves an encounter with others that has been disorienting and surprising and then thinks "what just happened?" This was one of those days for both defense counsel and the prosecutors.

**60.** 595 A.2d 381 (Del.1991).

**61.** Had the Trial Judge conducted the necessary *Los* analysis and recused herself from deciding the motion to dismiss, Butler would have had a prompt opportunity to make a record with another judge—or potentially a former judge because of the inelegant nature of the issue—before enduring a trial with a second jury. One area of inquiry could have focused on what the Trial Judge was doing at the times she said she was not available. If that inquiry revealed that the Trial Judge was in fact handling other judicial matters, then that would have cut against Butler. But if that inquiry revealed that the Trial Judge had instead scheduled personal matters during a week when she was on criminal rotation and had expected that plea bargains would enable her to attend to those matters without inconvenience, then that would have provided evidence that the Trial Judge intended not to have Butler's trial proceed that week. In our view, it would be unfair at this late stage to subject Butler to further delay by making him present his motion in a new trial-level proceeding before a different judge.

human beings, they cannot always be at their best. Indeed, even the most conscientious judges will commit errors. But where a Trial Judge's infelicitous actions evidence an intention to avoid presiding over a defendant's trial before an empaneled jury, and have the effect of impelling a motion for a mistrial by the defendant's attorney, we are obligated to enforce the defendant's constitutional right.

### C. *Butler's Claim of Judicial Bias Is Moot*

 Butler's second claim is that the Trial Judge's failure to conduct a two-part *Los* analysis was reversible error. The Due Process Clause of the Fourteenth Amendment "requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." [62] The "rules of disqualification have evolved to ensure that no judge shall preside in a case in which he [or she] is not disinterested and impartial." [63]

 In *Los*, this Court adopted a two-part test that a judge is required to undertake when faced with a claim of personal bias or prejudice.[64] The State concedes that the Trial Judge erred when she failed to conduct the *Los* analysis. But, because we have independently examined the rec-

ord *de novo* and found that Butler's motion to dismiss based on the Double Jeopardy Clause should be granted, Butler's claim that the Trial Judge erred in not recusing herself is now moot.[65]

### III. CONCLUSION

For the foregoing reasons, we conclude that Butler's motion to dismiss should have been granted and that his subsequent convictions before a second jury are barred by the Double Jeopardy Clause. Accordingly, the judgment of convictions entered by the Superior Court on April 12, 2013 is **RE-VERSED.**

RIDGELY, Justice, dissenting:

Butler makes the extraordinary claim that the Double Jeopardy Clause bars his convictions because the Trial Judge intended to provoke his mistrial request, thereby subjecting him to the substantial burden imposed by multiple prosecutions. "[O]nly a high-handed wrong intentionally directed against [a] defendant's constitutional right" to a trial before an empaneled jury will bar a new trial.[1] And more than a showing of prosecutorial or judicial error is required.[2] The record here does not show the specific intent required for the Double Jeopardy Clause to apply. Rather,

---

**62.** *Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (citation omitted) (quoting *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

**63.** *Los,* 595 A.2d at 383.

**64.** *Id.* at 384–85. First, the judge must be satisfied "as a matter of subjective belief ... that he [or she] can proceed to hear the cause free of bias or prejudice concerning that party." *Id.* Second, if the judge subjectively believes that she is without bias, she must also find that there is no "appearance of bias sufficient to cause doubt as to the judge's impartiality." *Id.*

**65.** *See Am. Littoral Soc., Inc. v. Bernie's Conchs, LLC,* 954 A.2d 909, 2008 WL 2520634, at *2 (Del.2008) ("Under the mootness doctrine, 'although there may have been a justiciable controversy at the time the litigation was commenced, the [claim] will be dismissed if that controversy ceases to exist.' ") (quoting *Gen. Motors Corp. v. New Castle Cnty.,* 701 A.2d 819, 823 (Del.1997)).

**1.** *United States v. Pavloyianis,* 996 F.2d 1467, 1469 (2d Cir.1993).

**2.** *See United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

the totality of the record shows a Trial Judge who expected the trial to proceed on the schedule all could meet and that Butler voluntarily sought a mistrial because defense counsel wanted alternate jurors. Defense counsel expressly acknowledged that double jeopardy was a "nonissue," and Butler is bound by that concession. Because Butler's convictions are not barred by the Double Jeopardy Clause, I respectfully dissent.

When choosing to request a mistrial, Butler's defense counsel explicitly based her request *solely* upon the lack of alternate jurors. Alternate jurors are not required and a trial may proceed without them.[3] Butler did not object to the additional *voir dire* that was conducted by the Trial Judge. The jurors who were excused (and not all were) were excused for cause and without objection. There was no actual problem in trying the case before the motion for mistrial was made. In moving for a mistrial, defense counsel merely speculated about one stating, *"We're going to have no alternates, that's the problem. And we're looking at five-four, maybe a fifth day with no alternates. I'm not doing this twice, I'm not doing it with less than 12 [jurors]."*[4]

Butler's double jeopardy claim was waived. His counsel expressly acknowledged that double jeopardy was a "nonissue."[5] He is bound by that tactical concession. And Butler has not shown why he should be relieved of it. The prosecutors relied on this concession in not opposing his mistrial request, and the Trial Judge relied upon it in granting the mistrial. Afterthoughts developed with colleagues from defense counsel's office cannot change the fact that Butler consented to the mistrial by requesting one and admitted there was no double jeopardy issue.

On the merits, the totality of the record shows that the Trial Judge expected the trial to continue.[6] Prior to Butler's mistrial motion, the Trial Judge accepted the trial assignment, determined that there would be no plea agreement, and ascertained that twelve jurors and the parties could meet a trial schedule that ended consistent with her own availability on the following Monday. It was Butler's counsel—and not the Trial Judge, the prosecutors, or the jury—who was unwilling to proceed to trial without alternates. None of the objections raised by Butler in his motion to dismiss were raised at the first trial. The best evidence of why there was a mistrial is in the record of the trial itself. As defense counsel explained at that trial, "the defense is asking for the mistrial because *I need a full compliment [sic] of jurors."*[7]

I also disagree with the majority's conclusion that "defense counsel had a reasonable basis to fear that other jurors might be later excused by the Trial Judge."[8] I find nothing in the trial record to support this conclusion. The record shows that the jury of twelve was in fact available through Monday. A mere possibility that another juror *might* be excused is insufficient to bar a new trial when Butler asked

3. *See Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967); *Boisen v. United States,* 181 F.Supp. 349, 350 (S.D.N.Y.1960).

4. Appellant's Op. Br. Appendix at A39 (emphasis added).

5. *Id.* (emphasis added).

6. *See United States v. Dinitz,* 424 U.S. 600, 611 n. 14, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (refusing to find judicial goading where "the judge expected the trial to continue").

7. Appellant's Op. Br. Appendix at A79 (emphasis added).

8. Majority Opinion, *supra,* at 36–37.

for one. Butler has not met the exacting standard for the bar of double jeopardy to apply. I would affirm his convictions.

I respectfully dissent.