**Jerome SULLINS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 466, 2006.

Supreme Court of Delaware.

Submitted: May 23, 2007.
Decided: July 23, 2007.

---

Jan A.T. van Amerongen, Jr., Esquire, Wilmington, Delaware for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before, HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice.

Jerome Sullins ("Sullins") appeals from his Superior Court convictions and sentences on various drug charges. Sullins claims that the Superior Court reversibly erred in: (1) denying his motion to dismiss the indictment on Double Jeopardy grounds after the Superior Court declared a mistrial; and (2) permitting the State to introduce testimony that Sullins was under probation supervision at the time of his arrest. We find no merit to Sullins' claims and, therefore, affirm.

### FACTS

On April 21, 2004, Delaware State Police Detective Vincent Clemons ("Detective Clemons") learned from an informant that Sullins had crack cocaine for sale at his residence on Carter Street in Wilmington. At Detective Clemons' request, the informant telephoned Sullins and arranged to buy cocaine from him. Clemons then noti-

fied the Wilmington police of the impending drug transaction. Because Sullins was on probation, Wilmington police notified officials at Probation and Parole.

Probation officers, accompanied by Wilmington police, drove to Sullins' Carter Street residence, where Sullins was standing in his doorway. Upon seeing the probation officers, whose shirts identified them as such, Sullins went inside his house and shut the door. The officers followed. While inside, the officers heard noises coming from the second floor, and ordered Sullins to surrender. Sullins complied. He came downstairs from a second floor bedroom, and was apprehended in the kitchen. On Sullins' person, police officers found $1,630. Checking the bedroom from which he had come, officers noted that a vent cover had been removed from the wall. At the bottom of the duct, in the basement police officers found two bags of crack cocaine weighing approximately two and half ounces. Sullins admitted that the drugs belonged to him. The police also found an electronic scale.

Sullins was indicted for Trafficking Cocaine in Excess of 50 grams, Possession with Intent to Deliver Cocaine, Maintaining a Dwelling for Keeping Controlled Substances, Possession of Drug Paraphernalia and Resisting Arrest. At Sullins' first trial, which began on February 15, 2005, Sullins' defense counsel moved for a mistrial when the prosecutor asked the first witness, Detective Clemons, whether he was "working with an individual or an informant." Defense counsel argued that the reference to an informant would unfairly buttress the credibility of the police

witnesses. The trial court denied the mistrial motion, but cautioned the prosecution that the police witness should not "even come close to testifying as to what an informant told him."

On re-direct examination, the prosecutor asked Detective Clemons to describe his "role in this, what actually went down on April 21st, 2004." Clemons replied that he "had information that a black male named George who lived on Carter Street was selling crack cocaine." (Another witness testified that George was a name used by Sullins.) At this point defense counsel renewed his motion for a mistrial, arguing that both the existence of an informant had been disclosed as well as the information the informant had supplied. The trial court denied the motion but instructed the jury to disregard the testimony as hearsay.[1] Later that day, the defense requested a *Flowers*[2] hearing to determine whether the confidential informant could testify favorably to the defense case. The Superior Court denied the motion, based on its recollection of the *Flowers* opinion.

During the overnight recess, the trial judge re-read *Flowers* and concluded that his previous day's ruling was erroneous. At the beginning of the next trial day, the trial court discussed possibly reversing its ruling. The prosecutor protested that the motion for a *Flowers* hearing should have been made before trial, but stated that "if I need some time to do that and I'll need to contact Detective Clemons...." The trial judge then addressed defense counsel:

THE COURT: Well, Mr. Malik [defense counsel], I don't know if there's anything for you to say since I told you I'm about

---

1. The trial judge instructed jury that:
Ladies and Gentlemen, the testimony that the officer just gave you that he had gotten information about somebody named George is plainly hearsay. It's what somebody else told him. That person is not present here to be-to be-to give testimony under oath or

to be questioned by either side. The jury's to disregard that statement, and it's not to play any part in your deliberations in this case.

2. *State v. Flowers,* 316 A.2d 564 (Del.Super., 1973).

98 percent toward *granting your motion.*

MR. MALIK: Sometimes, Your Honor, it's better to say nothing and just sit down. That's what I'm going to do. I agree with the Court.

THE COURT: I will *grant then the defendant's motion* for a mistrial based on not having had an opportunity to have a *Flowers* hearing pretrial. The case will go back on the list so the State can then determine whether it's necessary at the subsequent trial to refer to the informer because that appears to be the key element here. So a mistrial is declared.

The prosecutor then began to re-argue the merits of his *Flowers* position:

MR. CHAPMAN [prosecutor]: Mr. Malik didn't file the pretrial *Flowers* hearing before the trial. I don't see why the State is being—why the case—there's got to be a mistrial declared.

MR. MALIK: Your Honor, if I can just respond just for the purposes of the record. I'd like to respond to why I didn't file for a *Flowers* hearing before trial. That was because under the three scenarios of *Flowers,* I didn't think that anything applied where there was a basis for it when we got into trial. And then when the State started mentioning the informant—they mentioned the informant, not me.

THE COURT: I find that as well.

After the Superior Court declared a mistrial, Sullins then moved to dismiss the indictment, claiming that a second trial would violate his constitutional right against double jeopardy, because the Supe-

rior Court had declared a mistrial *sua sponte.* Delaware case law holds that the Double Jeopardy clause does not preclude a defendant's retrial if the record shows that the mistrial was declared *sua sponte* by the Court for reasons of "manifest necessity." [3] The Superior Court conceded that it did "not consider whether there was a manifest necessity for a mistrial." [4] Nevertheless, it denied Sullins' motion to dismiss, ruling that Sullins' double jeopardy argument lacked merit because there was no indication that the prosecution had deliberately provoked a mistrial. [5]

At his second trial, Sullins produced two witnesses, James Brown and Robert Truitt. Both witnesses claimed that they had been living with Sullins at his Carter Street residence at the time of the search and arrest. In rebuttal, the State proffered the testimony of Andrea Sullivan, Sullins' probation officer. Sullivan testified that, as a condition of Sullins' probation, Sullins was required to notify her of the persons with whom he was living, and that Sullins had never notified her of either Brown or Truitt. Sullins objected to Sullivan's testimony under D.R.E. 403, arguing that the relevance of that evidence was substantially outweighed by the danger of unfair prejudice to the defense from Sullins being identified as a probationer. The trial judge overruled the objection, and after Sullivan testified, gave the jury an appropriate limiting instruction.

In April 2006, the jury returned verdicts of guilty of the charges of Trafficking in Cocaine, Possession of Cocaine (a lesser included offense of Possession with Intent to Deliver), Maintaining a Dwelling, and

---

**3.** *Hughey v. State,* 522 A.2d 335, 338 (Del. 1987), citing *Bailey v. State,* 521 A.2d 1069 (Del.Supr., 1987).

**4.** *State v. Sullins,* 2006 WL 1067285, at *2, 2006 Del.Super. LEXIS 121, at *5 (Del.Super., Apr. 11, 2006).

**5.** *State v. Sullins,* 2006 WL 1067285, 2006 Del.Super. LEXIS 121 (Del.Super., Apr. 11, 2006).

Possession of Drug Paraphernalia. The jury found Sullins not guilty of Possession with Intent to Deliver and Resisting Arrest. Following the verdict, Sullins moved for a new trial, claiming that the Superior Court had abused its discretion in permitting the proffered probation officer's testimony that Sullins was on probation at the time of the alleged offense. The Superior Court denied Sullins' motion.

In August 2006, the court sentenced Sullins to fifteen years at Supervision Level 5, suspended after ten years for eighteen months at Supervision Level 3 for Trafficking in Cocaine; and for the other convictions, for a total of five years at Supervision Level 5, suspended immediately for Supervision Level 3.

On appeal, Sullins presents two issues. The first is whether the Superior Court erroneously denied Sullins' motion to dismiss his indictments based on violations of the Double Jeopardy clauses of the Delaware and United States Constitutions. The second is whether the trial court abused its discretion by admitting Sullins' probation officer's testimony that Sullins was under probation supervision at the time of his arrest. These issues are addressed in that order.

### ANALYSIS

#### I. The Double Jeopardy Claim

■ We review claims alleging an infringement of a constitutionally protected right, including the right not to be subjected to double jeopardy, de novo.[6]

■ The Double Jeopardy Clauses of the United States and the Delaware Constitutions protect a criminal defendant against multiple punishments or successive prosecutions for the same offense.[7] In Green v. United States,[8] the United States Supreme Court described the policy underlying the Double Jeopardy provision as follows:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.[9]

■ A criminal defendant owns "the valued right to have his trial completed by a particular tribunal."[10] The declaration of a mistrial implicates that right. The declaration of a mistrial does not always contravene the double jeopardy prohibition, however. As the United States Supreme Court has stated:

> The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.[11]

■ Generally, where a trial is not completed and a mistrial has been declared, the Double Jeopardy clause precludes a

---

**6.** Keyser v. State, 893 A.2d 956, 961 (Del. 2006).

**7.** U.S. Const. amend. V; Del. Const. art. I, § 8.

**8.** 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

**9.** Green, 355 U.S. at 187–88, 78 S.Ct. 221.

**10.** Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

**11.** Id. at 688–89, 69 S.Ct. 834.

retrial of the defendant, unless the defendant has consented to the mistrial or the mistrial was compelled by "manifest necessity."[12] An exception to this principle arises, however, "when a defendant's motion for mistrial is the result of judicial or prosecutorial impropriety that was intended to provoke the defendant into filing the motion.... [In those circumstances], there has been no consent and the Double Jeopardy Clause bars retrial."[13]

 In Delaware, "[a] motion by the defendant for a mistrial, which is granted, generally removes any barrier to reprosecution."[14] Because the mistrial was declared at Sullins' urging, the Double Jeopardy clause bars a retrial only if Sullins can show that prosecution's conduct "was *intended* to provoke a mistrial."[15] It is the defendant's burden to prove that the prosecutor acted with intent to provoke a mistrial.[16] That is an "extremely exacting standard."[17] As the United States Court of Appeals for the Second Circuit expressed it, "only a high-handed wrong intentionally directed against [a] defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense."[18] The United States Supreme Court has held that determining whether a prosecutor intended to goad the defense "merely calls for the court to make a finding of fact."[19] Thus, in the specific context of "double jeopardy goading cases,"[20] we must uphold the Superior Court's factual determination unless we find it to be clearly erroneous.

In this case, despite Sullins' contrary assertion, there was no judicial or prosecutorial goading that would negate the voluntary nature of Sullins' motion for a mistrial. Although the prosecutor elicited inadmissible testimony from Detective Clemons, there is no evidence that the prosecutor sought to goad the defense into moving for a mistrial. Indeed, the prosecutor seemed unaware of his mistake and contested the defendant's mistrial motion after the court's mistrial declaration:

> MR. CHAPMAN [the prosecutor]: Your honor, I wasn't under the impression that we were even discussing a mistrial. I was under the impression that the Court was going to put the trial on hold and possibly order a Flowers hearing to take place either today or sometime tomorrow. I was totally caught blind-sided by the fact the Court was considering declaring a mistrial.

---

12. *Earnest v. Dorsey,* 87 F.3d 1123, 1128 (10th Cir.1996), citing *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) and *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

13. *Id.,* citing *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

14. *Bailey v. State,* 521 A.2d 1069, 1075 (Del. 1987), citing *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, (1982). *See also, United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (holding that a defendant's motion for a mistrial is deemed to be a waiver of his "valued right to have his guilt or innocence determined before the first trier of fact.") *Id.* at 93, 98 S.Ct. 2187.

15. *Bailey v. State,* 521 A.2d at 1078 (emphasis in original), *see also Camden v. Circuit Court of Second Judicial Circuit,* 892 F.2d 610, 614 (7th Cir.1989).

16. *See United States v. Borromeo,* 954 F.2d 245, 247 (4th Cir.1992).

17. *Earnest v. Dorsey,* 87 F.3d 1123, 1130 (10th Cir.1996).

18. *United States v. Pavloyianis,* 996 F.2d 1467, 1469 (2d Cir.1993).

19. *Oregon v. Kennedy,* 456 U.S. at 675, 102 S.Ct. 2083.

20. *United States v. de Jesus Valadez–Camarena,* 163 F.3d 1160, 1163 (10th Cir.1998).

Thus, the record strongly supports the Superior Court's finding that the prosecution did not "act in bad faith or intent to provoke a mistrial."[21] Nor is there any evidence of the record indicating any such intent on the part of the trial court. Because Sullins has failed to show that he was goaded to move for mistrial by improper prosecutorial conduct, Sullins' first claim of error fails under the Double Jeopardy Clauses of the Delaware and the United States Constitutions.

## II. *The Disclosure–of–Probation–Status Claim*

■ Sullins next claims that the Superior Court erred by admitting Probation Officer Sullivan's testimony that Sullins was under probation supervision at the time of his arrest. Sullins asserts that the danger of unfair prejudice substantially outweighed the relevance of this testimony under D.R.E. 403.[22] We review the trial judge's refusal to grant a motion to suppress evidence for abuse of discretion.[23]

Under D.R.E. 403, evidence, even if logically relevant, may be excluded as not legally relevant "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury...."[24] In a factually similar case, the North Carolina Court of Appeals has held that the probative value of a probation officer's testimony that the defendant was a probationer and that the

defendant verified that the place where drugs were found was his residence, was not substantially outweighed by the danger of unfair prejudice.[25]

Similarly, here, Sullins chose to present the testimony of two witnesses that they shared living quarters with him. Sullins' purpose was to suggest that the drugs that police found in the Carter Street residence may have belonged to someone other than himself. As a condition of his probation, however, Sullins was required to keep the probation department apprised of his living arrangements, including the persons with whom he was living. During rebuttal, Sullivan testified that Sullins never reported to his probation officer, Ms. Sullivan, that he shared his residence with either of those witnesses.

Ms. Sullivan's rebuttal testimony was both an adequate and a necessary link between Sullins and his residence where the drugs were found, and its probative value was not substantially outweighed by the danger of unfair prejudice. The Superior Court, fully aware of the risk surrounding testimony given by Sullins' probation officer, gave the jury an appropriate instruction. Thus, "[t]o the extent that there was prejudice it was mitigated by an instruction given by the [Superior Court] to the effect that the jury should not consider the defendant's probationary status as evidence of guilt."[26] We find that in

---

**21.** *State v. Sullins*, 2006 WL 1067285, at *3, 2006 Del.Super. LEXIS 121, at *7 (Del.Super., Apr. 11, 2006).

**22.** Delaware Uniform Rules of Evidence 403 *Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time* provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

D.R.E. 403.

**23.** *See Gregory v. State*, 616 A.2d 1198, 1200 (Del.1992); *Virdin v. State*, 780 A.2d 1024, 1030 (Del.2001).

**24.** *Id.*

**25.** *See State v. Shine*, 173 N.C.App. 699, 619 S.E.2d 895, 898 (2005).

**26.** *State v. Sullins*, 2006 WL 1067285, *1, 2006 Del.Super. LEXIS 220, at *2 (Del.Super. May 31, 2006).

concluding that the prejudicial effect of Sullivan's testimony was outweighed by the probative value of the evidence, the trial court did not abuse its discretion.

Sullins argues, in the alternative, that Ms. Sullivan's testimony should have been excluded under D.R.E. 404(b),[27] citing *Getz v. State*.[28] Sullins argues that the testimony would have revealed that Sullins had been convicted of some other crime, yet invited speculation as to the nature of the conviction and the underlying conduct. Essentially, Sullins argues that Ms. Sullivan's testimony did not satisfy the fifth *Getz* prong, which requires that the trial judge exclude the evidence unless the probative value of the evidence outweighs the potential for unfair prejudice. Because Sullivan's testimony was admissible under D.R.E. 403, Sullins' *Getz* argument fails for the same reasons. And, because Sullins failed to identify what other *Getz* prongs were not satisfied, we need go no further in reviewing his *Getz* claim.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

**27.** D.R.E. 404 provides:
> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

D.R.E. 404 (2001).

**28.** 538 A.2d 726 (Del.1988). In *Getz*, this Court illustrated the following guidelines for the admissibility of other crimes evidence under D.R.E. 404(b):
> (1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.
> (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.
> (3) The other crimes must be proved by evidence which is "plain, clear and conclusive."
> (4) The other crimes must not be too remote in time from the charged offense.
> (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.
> (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.

*Getz v. State*, 538 A.2d 726, 734 (Del.1988).