**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | **ID No. 1511017784A&B** |
| | ) | |
| **BOBBY TAYLOR,** | ) | |
| Defendant. | ) | |

Submitted and Decided: September 3, 2019*
Written Decision Issued: September 20, 2019
Corrected: September 23, 2019

## ORDER DENYING DEFENDANT'S MOTION FOR DISMISSAL OF INDICTMENT

This 20th day of September, 2019, having considered Defendant Bobby Taylor's Motion to Dismiss the indictment; the State's Response thereto; the parties' supplemental filings; the parties' oral arguments; and the record in this matter; it appears to the Court that:

(1) On November 27, 2017, Defendant Bobby Taylor was indicted for multiple charges stemming from the shooting death of Aloysius Taylor[1] at the car detailing business where they both worked.[2]

---

\* The Court denied this motion via bench ruling after oral argument on September 3, 2019. This Order is entered merely as a complement to the Court's analysis and ruling that was set forth on the record at that time.

[1] Defendant Bobby Taylor is of no known relation to victim Aloysius Taylor. "Taylor" hereafter refers to the Defendant Bobby Taylor. The Court refers to the victim by his first name to avoid confusion. Neither undue familiarity nor disrespect is intended.

[2] *See* Indictment, *State v. Taylor*, ID No. 1511017784A (Del. Super. Ct. November 27, 2017) (D.I. 4).

- 1 -

(2)     The errors that halted the prior proceedings occurred on the second day of Taylor's first jury trial.  During Taylor's cross-examination as a witness in his own defense, State's counsel needlessly questioned him about prior criminal convictions;[3] personalized the prosecution team and law enforcement through repeated use of the collective "we";[4] and asked questions suggesting adverse inferences from Taylor's exercise of his right to remain silent between his arrest and trial.[5]  Based thereon, Taylor moved for a mistrial.  The Court granted that application the next day.[6]

(3)     Taylor now moves to dismiss his indictment claiming that retrial would constitute double jeopardy.[7]  As the State seeks a new trial of his murder and firearms charges,[8] this claim is ripe for decision.[9]

---

[3]     Feb. 26, 2019 Defendant's Cross/Recross-Examination Tr., at 12-13 (D.I. 52).

[4]     *Id.* at 26-27.

[5]     *Id.* at 40.

[6]     Feb. 27, 2019 Mistrial Motion Tr., at 35 (D.I. 42).

[7]     Motion to Dismiss Indictment, *State v. Taylor*, ID. No. 1511017784A (Del. Super. Ct. May 29, 2019) (D.I. 45).

[8]     Email Correspondence with Counsel, *State v. Taylor*, ID. No. 1511017784A (Del. Super. Ct. May 29, 2019) (D.I. 43) (confirming retrial dates).  Jury selection for Taylor's retrial is to commence on September 23, 2019.

[9]     *See Morris v. State*, 795 A.2d 653, 661 (Del. 2002) (State's election of a retrial ripens a double jeopardy claim).

(4) When a criminal defendant moves for a mistrial, the Double Jeopardy Clauses of the United States[10] and Delaware[11] Constitutions bar retrial only when the mistrial was intentionally provoked by the State.[12] This is a "narrow exception" to the general rule permitting retrial.[13] When applying this narrow exception the Court as fact finder[14] may infer intent.[15]

(5) In its cross-examination of Taylor regarding his prior criminal convictions, the State just reiterated[16] that which had already been fully elicited on

---

[10] U.S. Const. amend. V.

[11] Del. Const. art. I, § 8. Delaware's Double Jeopardy clause is "virtually identical" to the Federal one, and follows the same standards. *Hughey v. State*, 522 A.2d 335, fn 5 (Del. 1987).

[12] *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982); *Sullins v. State*, 930 A.2d 911, 916 (Del. 2007) (observing this includes causing mistrial by intentional violations of due process that goad defendant into seeking a mistrial). Federal case law prior to *Kennedy* also barred retrial when the prosecution's conduct caused a mistrial through "bad faith" rather than intent. *Lee v. United States*, 432 U.S. 23, 33 (1977). *Kennedy* explained that in this context "bad faith" was limited to deliberate violations of a defendant's due process rights *intended* to present a criminal defendant with a Hobson's choice of risking conviction by an improperly prejudiced jury or allowing the State a second opportunity to build a stronger record before a new fact finder. 456 U.S. at 685-686.

[13] *Butler v. State*, 95 A.3d 21, 32 (Del. 2014). Though irrelevant here, this "narrow exception" includes a mistrial provoked by judicial conduct; a double jeopardy claim in that circumstance is governed by this same standard. *Id.*

[14] *Sullins*, 930 A.2d at 916.

[15] *Kennedy*, 456 U.S. at 675-76.

[16] Feb. 26, 2019 Defendant's Cross/Recross-Examination Tr., at 12-13 (D.I. 52) (Prosecutor: "[Defense counsel] asked you on direct examination about your conspiracy and your criminal impersonation, right?"; Taylor: "Yes.").

direct examination[17] in contravention of long-settled Delaware law.[18] The prosecutor did this out of a failure to accurately understand (or perhaps even know of) this limitation imposed by relevant case law.[19] That decades-old case law is clear and unambiguous. State's counsel is charged with knowing the limits of permissible inquiry; State's counsel failed in this duty. Based on the record—which includes the offending prosecutor's admission of his unfamiliarity with the Delaware case controlling this precise issue—it is clear to the Court that such failure was negligent, perhaps even grossly negligent. But the Court finds the prosecutor's carelessness was not reflective of an *intentional* violation of Taylor's rights aimed at provoking a mistrial.

(6) In his use of the first person plural to refer to the prosecution/law enforcement team,[20] the prosecutor risked giving the jury the impression he either possessed undisclosed knowledge or capability or was due some earlier explanation of Taylor's defense.[21] This rhetorical flaw was met with prompt objection and

---

[17] Feb. 26, 2019 Defendant's Direct Examination Tr., at 9-10 (D.I. 51).

[18] *See Martin v. State*, 346 A.2d 158, 160 (Del. 1975) (forbidding a prosecutor's cross-examination questions that seeking merely to repeat impeachment for past criminal acts already admitted on direct examination).

[19] Feb. 27, 2019 Mistrial Motion Tr., at 13-14 (D.I. 42).

[20] Feb. 26, 2019 Defendant's Cross/Recross-Examination Tr., at 27 (D.I. 52)

[21] The other risk in this specific context, of course, was that the "we" just now "hearing that [self-defense] story" could be understood to include the jurors. *Id.* at 40. And even subtle attempts to align counsel or his client with the jury are likewise inappropriate.

- 4 -

correction on the record.[22] Many of the questions themselves were relevant and probative, and in context the Court detected no motive to exert improper influence. Through his phrasing the prosecutor's clear intention was to give persuasive force to a generally proper line of questioning, and not to invade Taylor's protected rights or provoke a mistrial. It was instead, the Court finds, intolerable inattention to proper syntax.[23]

(7) Most serious was the questioning related to Taylor's pre-trial silence.[24] The defense at trial, to the apparent surprise of the State, proceeded on a self-defense theory. According to Taylor, he was the victim of an attempted shooting shortly before he killed Aloysius. Taylor claims that—because of something said by Aloysius moments before the shooting—he, Taylor, formed the belief that Aloysius was in some way responsible for that attempt and that he, Taylor, was acting in reasonable fear for his own life and safety when he shot Aloysius.[25]

---

[22] Feb. 26, 2019 Defendant's Cross/Recross-Examination Tr., at 26-27 (D.I. 52).

[23] While there is no *per se* rule that the use of "I" or "we" is improper in argument or questioning, a prosecutor must be very careful that use of such language neither slips into statements of personal belief or knowledge nor creates other improper impressions. *See Derose v. State*, 840 A.2d 615, 621 n.17 (Del. 2003); *Cousins v. State*, 2001 WL 1353571, *1 (Del. Nov. 2, 2001); *see also Swan v. State*, 820 A.2d 342, 356 (Del. 2002).

[24] *Id.* at 60.

[25] Feb. 26, 2019 Defendant's Direct Examination Tr., at 23-24 (D.I. 51).

(8)     The State's cross-examination aimed to impeach Taylor's credibility by highlighting his failure to report the earlier alleged shooting, as well as his subsequent flight to Chattanooga, Tennessee. The State's obvious intent was to persuade the jurors to infer that Taylor failed to report the earlier shooting because it never occurred, and that he fled to and remained in Tennessee out of consciousness of his own guilt.[26]

(9)     The manner in which the State cross-examined Taylor failed to limit inquiry to only those permissible subjects. Instead, certain of the State's questions drew clear attention to Taylor's exercise of his right to remain silent *after* his arrest in Tennessee.

(10)    The State knew that Taylor's post-arrest silence was constitutionally protected.[27] When questioning Taylor about the permissible topic of his pre-arrest flight and silence, the State had actual knowledge of the risk that an improperly

---

[26]    *See Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) ("[T]he Fifth Amendment is not violated by the use of *prearrest* silence to impeach a criminal defendant's credibility.") (emphasis added); *Robertson v. State*, 41 A.3d 406 (Del. 2012) (discussing Delaware's long recognition that evidence of flight supports an inference that an accused fled out of consciousness of guilt); and *MacDonald v. State*, 816 A.2d 750, 753 (Del. 2003) (permitting cross-examination of a testifying defendant on pre-arrest silence and statements, and post-arrest statements, but not post-arrest silence).

[27]    Feb. 27, 2019 Mistrial Motion Tr., at 19 (D.I. 42).

phrased question might unduly trample on Taylor's Fifth[28] and Sixth[29] Amendment rights to silence between arrest and trial. By proceeding with actual knowledge of this hazard, the State violated Taylor's rights recklessly.

(11) But it is specific *intent* by the prosecution to cause a mistrial that the Court must find in order for that resulting mistrial to bar retrial and mandate dismissal.[30] Merely because an act taken before the factfinder is so unfairly prejudicial as to necessitate mistrial does not suffice to bar retrial, even when that act was undertaken wrongfully by the prosecutor.[31] Nothing less than the specific intent[32] to deny to the accused "the valued right to have his trial completed by a

---

[28]    *See Shantz v. State*, 344 A.2d 245, 246 (Del. 1975) ("The State may not comment on a defendant's exercise of the constitutional right to remain silent.").

[29]    At his arrest in Tennessee, in response to a query as to whether he would answer questions, Taylor immediately declined. Feb. 27, 2019 Mistrial Motion Tr., at 30 (D.I. 42). Once he was brought back to Delaware, authorities here asked again, and Taylor responded solely by naming his attorney. *Id.* Questions suggesting an adverse inference from Taylor's silence thus also trammel upon his Sixth Amendment right to deal with the police only through counsel. *Brown v. State*, 947 A.2d 1062, 1068 (Del. 2007) (citing *Michigan v. Jackson*, 475 U.S. 625, 626 (1986)).

[30]    *Sudler v. State*, 611 A.2d 945, 948 (Del. 1992) (It is only "[w]here 'the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial ... [that] a defendant [can] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.'") (quoting *Kennedy*, 456 U.S. at 676).

[31]    *Kennedy*, 456 U.S. at 675.

[32]    *See United States v. Gilmore*, 454 F.3d 725, 730 (7th Cir. 2006) ("[T]he element of intent is critical and easily misinterpreted, 'the fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial.") (quoting *United States v. Oseni*, 996 F.2d 186, 188) (7th Cir. 1993)); *United States v. Pavloyians*, 996 F.2d 1467, 1469 (2d Cir. 1993)("[T]he misconduct must have been undertaken with the deliberate purpose of depriving the defendant of double jeopardy's shield, that is to say, only a high-handed wrong intentionally

particular tribunal" suffices.[33] And here "[i]t is [Taylor]'s burden to prove that the prosecutor acted with intent to provoke a mistrial."[34]

(12) Because intent must almost always be inferred from the specific objective evidence before the Court, its determination is not readiliy amenable to bright-line rules or exhaustively enumerated tests. Citing both prior Delaware cases and those of other jurisdictions as persuasive examples, this Court has had occasion to identify some useful factors that bear mention.[35] Those include: whether there was a sequence of overreaching conduct; whether the prosecutor resisted or was surprised by the mistrial motion; whether the prosecution's case was going well; and the prosecutor's level of expertise.[36]

(13) In this case, the conduct Taylor claims was provocative of mistrial was confined to the cross-examination and re-cross of Taylor himself as a fact witness. Throughout the trial to that point, there is nothing the Court (or Taylor) can identify as "overreaching." It was only in Taylor's cross- and re-cross-examininations, that

---

directed against [a] defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense.").

[33] *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

[34] *Sullins*, 930 A.2d at 916.

[35] *State v. McCoy*, 2016 WL 7229893, at *4 (Del. Super. Ct. Dec. 14, 2016).

[36] *Id.*

the State committed the noted series of errors: use of the first person plural pronoun; gratuitous reiteration of Taylor's past convictions; and clumsy references to his post-arrest silence. This may well be described as a short—but serious[37]—episode of prosecutorial neglect or ineptitude, but the Court does not find this series of errors constitutes an intentional (or even knowing) pattern of overreaching behavior.

(14) The State's resistance to the mistrial is likewise telling. From the Court's observations, the State was vigorous and sincere in its opposition to Taylor's request for a mistrial.

(15) The purpose of the strength-of-case factor derives from the inference that a prosecutor may desire to cause a mistrial if weaknesses were exposed in the case that could be remedied on re-trial.[38] These can include failure of witnesses to appear, confrontation of the State's witnesses with previously unknown impeachment material, or simply an unpersuasive deportment of a critical witness.

---

[37] After all, it did result in the extreme remedy of a mistrial. *Steckel v. State*, 711 A.2d 5, 11 (Del. 1998) (quoting *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del. 1974)) ("A trial judge should grant a mistrial only where there is 'manifest necessity' or the 'ends of public justice would be otherwise defeated.'"); *Smith v. State*, 963 A.2d 719, 722 (Del. 2008) (quoting *Dawson v. State*, 637 A.2d 57, 62 (Del. 1994)) ("The remedy of a mistrial is 'mandated only when there are 'no meaningful and practical alternatives' to that remedy.'").

[38] *See State v. Morris*, 2002 WL 31520508, *3 (Del. Super. Ct. Oct. 16, 2002) ("[W]hether it be to gain advantage in a second trial or merely harassment, if the Court finds the State intentionally caused the defense to seek a mistrial, then that subverting of justice requires that double jeopardy bar future prosecution."); *see also, Oseni*, 996 F.2d at 187-88 (citing *Kennedy*, 456 U.S. at 676, 679) ("If after a criminal trial begins the government decides that the case is going badly for it . . . it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant.").

From the Court's position and observations, none of these factors were apparent. The State's case prior to cross-examining Taylor appeared fully developed and to have proceeded without incident. The Court does not perceive, and Taylor does not persuasively suggest,[39] any real advantage to a second trial which could have motivated intentional conduct to obtain one.

(16) Experience is a factor indicative of prosecutorial intent, because it tends to negate the alternative explanation of a mistake.[40] That said, an act cannot be intentionally provocative of mistrial when the actor doesn't even recognize that it might justify mistrial. The prosecutor credibly confessed his failure to understand the *Martin* limitation[41] and admitted his other verbal fumbles. These failures might be disillusioning, and the violations neither justifiable nor excusable, but the Court is convinced they were not intentional acts aimed at forcing a mistrial. The offending prosecutor has been employed by the Department of Justice's Criminal Division for at least a decade.[42] And the Court may have been (and is) dismayed by his failure

---

[39] Motion to Dismiss Indictment, at ¶34 (Taylor suggests the State now knows his trial strategy and has "a more favorable opportunity to rebut [his] claim of self-defense").

[40] *See State v. Long*, 1992 WL 207258, *3 (Del. Super. Ct. Jul. 23, 1992) ("No experienced Prosecutor could have taken the above described course of action without knowing . . . he or she forced the Defendant into seeking a mistrial.").

[41] *See* n.19, *supra*.

[42] *E.g. State v. Pustolski*, 2009 WL 10212727 (Del. Super. Ct. Nov. 30, 2009) (prosecutor's appearance entered as second chair in vehicular manslaughter) (Brady, J.); *State v. Maniscalco*, 2010 WL 2006575 (Del. Super. Ct. May 19, 2010) (prosecutor's appearance noted as sole counsel in robbery case) (Johnston, J.).

to recognize and reckon with long-established principles of Delaware criminal law.[43] But the Court credits the prosecutor's representation that he acted in error despite his experience because of his sincere deportment and the Court's firsthand observation of the trial events as they unfolded.

(17) Taylor bears the burden of proving to the Court as fact finder that mistrial was the prosecutor's intent.[44] Case law exploring how courts determine a prosecutor's motives is relatively sparse as related to *Kennedy* dismissal motions. But it is an area well-explored in the *Batson*[45] line of cases[46] investigating prosecutors' motivations for exercising preemptory challenges in jury selection. At bottom, when a prosecutor's intent behind certain trial behavior is at issue, the law relies heavily on the trial judge due to his her experience, proximity, and discretion.[47]

---

[43]    *See. e.g.,* Feb. 27, 2019 Mistrial Motion Tr., at 13-14 (D.I. 42).

[44]    *United States v. Borromeo*, 954 F.2d 245, 247 (4th Cir. 1992).

[45]    *Batson v. Kentucky*, 476 U.S. 79 (1986).

[46]    Delaware courts have adapted a number of lines of inquiry from well-reasoned cases applying *Batson* in the Second and Tenth Circuits. *State v. Jones*, 2007 WL 2142917, *2 (Del. Super. Ct. 2007).

[47]    *See Batson*, 476 U.S. at 97; *Hernandez v. New York,* 500 U.S. 352, 365 (1991) ("Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson,* the finding will 'largely turn on evaluation of credibility.'").

The trial judge is in the best position[48] to determine whether a prosecutor's explanation of or excuse for his or her acts is contrived or authentic.[49]

(18) The prosecutor's actions, taken as a whole, demonstrated rhetorical sloppiness, a careless disregard for key Constitutional rights which he knew were potentially implicated by his questioning, and frank noncomprehension of well-established Delaware case law. These errors were inexcusable. But, based on the Court's observations of the circumstances as a whole, they were not engaged with an intent to end Taylor's first trial before verdict. The State did not deliberately induce a mistrial to obtain a second (and better) shot upon retrial. As such, the extraordinary remedy of barring retrial and dismissing the indictment is unwarranted.[50] And so, Bobby Taylor's Motion to Dismiss his Indictment must be **DENIED.**

**SO ORDERED this 20th day of September, 2019.**

**Paul R. Wallace, Judge**

---

[48] *Robertson v. State*, 630 A.2d 1084, 1090 (Del. 1993); *Jones v. State* 940 A.2d 1, 7-8 (Del. 2007) (remanding to the Superior Court to conduct an "assessment of the credibility of the prosecutor's position").

[49] *See Hernandez v. New York*, 500 U.S. 352, 369 (1991) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)) (noting it is the trial court that must distinguish between multiple possibilities for an prosecutor's behavior where each is a permissible view of the evidence presented); *McCoy v. State*, 112 A.3d 239, 253 (Del. 2015).

[50] Barring retrial would in effect render the mistrial a dismissal with prejudice due to prosecutorial misconduct. That is an "extreme," "extraordinary," and "draconian" remedy rarely called for. *See State v. Robinson*, 209 A.3d 25, 56 (Del. 2019).

Original to Prothonotary

cc:    Eugene J. Maurer, Jr., Esquire
        Elise K. Wolpert, Esquire
        Matthew B. Frawley, Deputy Attorney General
        John S. Taylor, Deputy Attorney General