IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY S. WILLIAMS, | § | |
| | § | No. 97, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1804003122 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 28, 2019
Decided: January 22, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## <u>ORDER</u>

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) On December 17, 2018, after a four-day trial, a Superior Court jury found the appellant, Anthony S. Williams, guilty of one count of Rape in the Fourth Degree and not guilty of one count of Rape in the Fourth Degree. The Superior Court sentenced Williams to fifteen years of Level V incarceration suspended after two years for Level III probation. This is Williams's direct appeal.

(2) Williams waived his right to counsel and represented himself at trial with standby counsel. The testimony at trial established the following. On April 6, 2018, the Dover Police Department was notified that a sixteen-year-old runaway,

Lorraine Wilson,[1] had returned home to her grandmother and reported that she had engaged in consensual sexual intercourse with Williams, who was in his 40s. A police officer picked up Wilson to take her to Kent General Hospital for an examination by a Sexual Assault Nurse Examiner ("SANE"). On the way to the hospital, Wilson spotted and pointed out Williams' car, a gold Chevy SUV Equinox, outside Interfaith Mission Housing. A check of the SUV's registration confirmed that Williams was the owner.

(3) As part of the SANE examination, the nurse took multiple swabs of Wilson's body. Wilson told police officers at the hospital that she met Williams in the summer of 2017. They communicated through texts and telephone calls. Williams would take Wilson to and from school. Wilson said she had sex twice with Williams in his car the previous day (April 5th).

(4) While Wilson was at the hospital, police officers approached the gold SUV. Williams was in the SUV. The police arrested Williams.

(5) After the police re-interviewed Wilson at the Dover police station on April 10th, they obtained search warrants for Williams's DNA and SUV. The police took a swab of the inside of Williams's cheek for his DNA. During the search of the SUV, the police collected three cell phones. They obtained a search warrant for the phones. One phone had no data, one phone had no relevant data, and one phone

---

[1] The Court has assigned a pseudonym under Supreme Court Rule 7(d).

2

could not be accessed because it was password protected. On October 24, 2018, Williams met with police at the courthouse, provided the password for the cell phone, and was present while his texts with Wilson, which included texts on April 5th, were reviewed.

(6) Wilson testified that she met Williams in 2017. He would give her rides and food. After Wilson ran away from home at the end of March 2018, she stayed with Williams for several days. Wilson testified that they slept in his car while it was parked at the Delmarva Blood Bank and that they had consensual sex three or four times. At trial, Wilson did not recall the exact dates she was with Williams. A DNA analyst employed by the Division of Forensic Services testified that DNA extracted from Wilson's vaginal swabs matched the DNA profile obtained from the swab of the inside of Williams's cheek. The Superior Court denied Williams' motion for a judgment of acquittal at the close of the State's case.

(7) An investigator testified for the defense that surveillance video did not show Williams's car at the Delmarva Blood Bank. A police officer had previously testified that the Delmarva Blood Bank did not have any surveillance video. On cross-examination, the defense investigator testified that Williams told him that he had parked outside of the Delmarva Blood Bank in the days before his arrest to use the free WiFi and charge his phone.

3

(8) Williams testified that he gave many people rides, including Wilson. Sometimes he let Wilson sleep in his car. According to Williams, Wilson texted him for a ride on April 5, 2018, but he told her that he could not pick her up. Wilson texted Williams again for a ride the next day, but he was on his way to Philadelphia. Later that day he picked her up and took her home. Williams testified that the phone with the texts showing he was not with Wilson were destroyed. He denied raping Wilson. He confirmed that he was born in 1970.

(9) During deliberations, the jury asked if the two counts of fourth degree rape represented the number of times intercourse occurred or the number of days on which intercourse occurred. The Superior Court informed the jury that the two counts represented the two separate alleged acts that allegedly occurred on or about the 4th or 5th of April. The jury found Williams guilty of the first count, but not guilty of the second count of fourth degree rape. At sentencing Williams asked for appointment of counsel.

(10) On appeal, Williams' appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Williams of the provisions of Rule 26(c) and provided Williams with a copy of the motion to withdraw and the accompanying brief.

4

(11) Counsel also informed Williams of his right to identify any points he wished this Court to consider on appeal. Williams has raised points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(12) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2] Williams's arguments on appeal may be summarized as follows: (i) double jeopardy and insufficient evidence; (ii) violation of his right to a speedy trial; (iii) prosecutorial misconduct; (iv) the State withheld and destroyed evidence; (v) no chain of custody was established for his DNA evidence; (vi) judicial misconduct; and (vii) ineffective assistance of counsel. The Court does not consider ineffective assistance of counsel claims on direct appeal and does not do so here.[3]

(13) Williams's double jeopardy and insufficient evidence claims are without merit. "The Double Jeopardy Clauses of the United States and Delaware

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).
[3] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

Constitutions protect a criminal defendant against multiple punishments or successive prosecutions for the *same* offense."[4] Williams was convicted of, and sentenced for, one count of fourth degree rape. There is no double jeopardy violation here.

(14) Williams next claims that the jury's acquittal of him for one count of fourth degree rape means the evidence was insufficient for the jury to find him guilty of the other count of fourth degree rape. He is incorrect. In determining the sufficiency of the evidence, the Court examines "whether any rational trier of fact, reviewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[5] To convict Williams of fourth degree rape, the State was required to prove that Williams intentionally engaged in sexual intercourse with someone under the age of eighteen and that Williams was thirty years or older.[6]

(15) The evidence presented at trial, which included Wilson's testimony, Williams's testimony, and DNA analysis, was sufficient to convict Williams of fourth degree rape. It appears that the jury concluded that the evidence supported one count of fourth degree rape, but not more. Even if the guilty and not guilty

---

[4] *Sullins v. State*, 930 A.2d 911, 915 (Del. 2007) (emphasis added). *See also* U.S. Const. amend V; Del Const. art. I, § 8.
[5] *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991).
[6] 11 *Del. C.* § 770(a)(2).

verdicts are viewed as inconsistent, the Court may uphold the fourth degree rape conviction under the rule of jury lenity because there was sufficient evidence to justify that conviction.[7]

(16)   Williams next contends that his right to a speedy trial was violated because the Superior Court granted three continuances of the trial date over Williams's objections.  To determine if the defendant's right to a speedy trial has been violated, we use the four-factor balancing test adopted by the U.S. Supreme Court in *Barker v. Wingo*.[8]  The four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.[9]  The factors are related and no one factor is conclusive.[10]

(17)   A defendant's right to a speedy trial "attaches as soon as the defendant is accused of a crime through arrest or indictment whichever occurs first."[11]  Unless the length of delay is determined to be "presumptively prejudicial" the court does not consider the additional factors.[12]  This Court has found that if the delay between arrest or indictment and trial approaches one year, then the Court will consider the additional three factors.[13]

---

[7] *Tilden v. State*, 513 A.2d 1302, 1306-07 (Del. 1986).
[8] 407 U.S. 514 (1972).  *See also Johnson v. State*, 305 A.2d 622, 623 (Del. 1973) (adopting *Barker* test).
[9] *Barker*, 407 U.S. at 530.
[10] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002) (citing *Barker*, 407 U.S. at 533)).
[11] *Id.*
[12] *Barker*, 407 U.S. at 530.
[13] *Cooper v. State,* 2011 WL 6039613, at *7 (Del. Dec. 5, 2011).

(18) Williams was arrested on April 6, 2018 and indicted on July 2, 2018. His trial was originally scheduled to start on October 29, 2018 and ultimately began on December 12, 2018. Although this case was not complex, it did involve DNA collection, testing, and analysis. A period of approximately eight months between arrest and trial is not presumptively prejudicial here.

(19) Williams next argues that the prosecutor engaged in misconduct by referring to hearsay that was not admitted into evidence during her opening statement and falsely stating that a sample of Williams's sperm matched sperm found in Wilson's body. Williams did not raise this claim below so we review for plain error.[14] When reviewing a prosecutorial misconduct claim for plain error, we first review the record *de novo* to determine whether misconduct occurred.[15] If we determine that no misconduct occurred, our analysis ends. If we find misconduct, then the error must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[16]

(20) Williams does not identify the hearsay that the prosecutor wrongly referred to in her opening statement. The prosecutor's opening statement is consistent with the evidence that was presented at trial. As to Williams's contention that the prosecutor falsely stated a sperm sample was taken from him and matched

---

[14] Supr. Ct. R. 8.
[15] *Abbatiello v. State*, 2017 WL 3725063, at *2 (Del. Aug. 29, 2017).
[16] *Id.*

8

sperm found in Wilson's body, he mischaracterizes the prosecutor's statement. The prosecutor accurately stated that an oral swab was taken from Williams and that it matched the DNA of the sperm on the vaginal swabs taken from Wilson.

(21) Williams next contends that the State withheld or destroyed exculpatory evidence of Wilson's criminal activities, texts on Wilson's phone and his phone, and results of each DNA test. We construe this as a claim that the State violated Superior Court Criminal Rule 16 or *Brady v. Maryland*.[17] Under Rule 16, the State must, upon the request of the defendant, make available for inspection or copying "books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant."[18] A *Brady* violation occurs when a prosecutor fails to disclose favorable evidence that is material to either the guilt or punishment of the defendant.[19] To demonstrate a *Brady* violation, the defendant must establish three elements: (i) the evidence is favorable to the accused because it is either exculpatory or impeaching; (ii) the State suppressed that evidence; and (iii)

---

[17] 373 U.S. 83 (1963).
[18] Super. Ct. R. 16(a)(1)(C).
[19] 373 U.S. at 87.

9

the suppression prejudiced the defendant.[20] Williams has not established a violation of Rule 16 or *Brady*.

(22) He does not describe Wilson's alleged criminal activities or how those activities would be impeaching or exculpate him of fourth degree rape. As to the texts on Wilson's phone, the State explained at the hearing on Williams's motion to compel Wilson's phone records that it did not have Wilson's phone or phone records. Wilson was supposed to provide the phone to the State, but could not locate it. Rule 16 and *Brady* only apply to evidence in the State's possession, custody, or control.[21]

(23) As to the texts on Williams's phone, the police could not initially access those texts because the phone was password protected. There were also difficulties charging the phone because it was older, lacked a charger, and the charging port was not functioning at the time of Williams's arrest. Williams instructed the police on how to charge the phone by removing the battery and putting it into another of his phones with a functioning port to charge. On October 24, 2018, Williams met with the police at the courthouse, provided the password for the phone, and was present while his texts with Wilson were reviewed. A police officer later tried to recharge the phone as Williams had instructed so he could take photographs of the texts, but

---

[20] *Goode v. State*, 136 A.3d 303, 312-13 (Del. 2016) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

[21] *Schaffer v. State*, 2018 WL 1747793, at *3 (Del. Apr. 10, 2018) (recognizing that *Brady* and Rule 16 only apply to evidence within the State's possession or control) (citations omitted).

10

the phone would no longer charge. The prosecutor informed Williams and the Superior Court at the beginning of trial that the phone would no longer charge, even following Williams's previous instructions, and could not be turned on.

(24) When Williams asked how he would introduce the texts on the phone into evidence, the prosecutor offered him the audio recording of his October 24, 2018 interview with the police because the recording included descriptions and dates of the text messages. The Superior Court informed Williams that he could make an application to introduce the recording into evidence, but he never did so. The Superior Court also informed Williams that he could ask any of the witnesses about the text messages.

(25) Under these circumstances, we find no *Brady* violation here. Even assuming the texts were exculpatory as Williams claims, the State did not withhold the texts on the phone, which already had a non-operational port and could not be charged by conventional methods at the time of his arrest, from Williams. When Williams's method of charging the phone no longer worked, the State offered Williams the October 2018 audio recording as a way for him to introduce the content of the texts into evidence. He chose not to do this and cannot now complain that the State withheld exculpatory evidence from him.

(26) We also find no merit to Williams's claim that the Superior Court erred in denying his motion for a missing evidence or *Lolly* instruction based on the non-

11

functional phone.  Such an instruction "tells the jury, in a case where the State has failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty."[22]  We review the denial of a request for a *Lolly* instruction *de novo*.[23]

(27)   To determine if a *Lolly* instruction is appropriate, the court considers whether: (i) the requested material is subject to disclosure under Rule 16 or *Brady*; (ii) the State had a duty to preserve the materials; and (iii) the State breached its duty and what consequences should flow from that breach.[24]  If it is determined that the State breached its duty, then the court will determine the consequences of the breach by considering: (i) the degree or negligence or bad faith involved; (ii) the importance of the missing evidence and the reliability of secondary or substitute evidence that remains available; and (iii) the sufficiency of the other evidence produced at trial.[25]

(28)   The Superior Court assumed the texts on Williams's phone were subject to disclosure under Rule 16 and that the State had a duty to preserve the texts, but found that the State had not breached its duty.  The Superior Court further found

---

[22] *Baynum v. State,* 133 A.3d 963, 967 (Del. 2016) (internal quotations omitted). *See also Deberry v. State,* 457 A.2d 744, 754 (Del. 1983) (holding that the State, including its police agencies, is obligated to preserve evidence that is material to a defendant's guilt or innocence and that, when the State fails in this duty, the defendant is entitled to an inference that the evidence would be exculpatory); *Lolly v. State,* 611 A.2d 956, 960 (Del. 1992) (extending *Deberry* to a claim involving a police failure to gather evidence).

[23] *McNair v. State*, 990 A.2d 398, 403 (Del. 2010).

[24] *Baynum*, 133 A.3d at 968.

[25] *Id.* at 968.

that there was no evidence of negligence or bad faith by the State, Williams failed to show that the texts were central to his defense that he did not have sex with Wilson on April 5, 2018, and there was substantial evidence—the DNA results—to support a possible conviction of Williams. We find no error in the Superior Court's application of the law or factual findings.

(29) As to Williams's contention that the State failed to produce all of the results of his DNA tests, it is unclear what he is referring to or how it would be exculpatory. The State produced the DNA analyst's report and all of the related documentation, including different test results, to Williams.

(30) Williams next contends that the State failed to establish a chain of custody for his DNA evidence. Williams did not object to the admission of the DNA analyst's report or his DNA sample in the proceedings below, but he did challenge the chain of custody for his DNA evidence at the conclusion of the State's case as part of his motion for a judgment of acquittal. This claim is without merit.

(31) Under Delaware Rule of Evidence 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The State may authenticate evidence either by having a witness identify the item as that which was actually involved in the crime or by establishing a chain of custody for the item to ensure the identity and integrity of the evidence by

tracing its whereabouts.[26] In this case, the State presented the testimony of the police officer who collected, packaged, and logged Williams's DNA sample, the police officer who transported the sample to the Division of Forensic Sciences, and the DNA analyst who opened the package and tested the sample. Williams contends that the original collection swab was missing from the package received by the Division of Forensic Sciences, but the DNA analyst testified that the contents of the package she received conformed with proper protocol. The record reflects that a sufficient chain of custody was established from the time Williams's DNA sample was taken until the time the sample was tested.

(32) Finally, Williams's claims of judicial bias and misconduct are without merit. These claims are based on Williams's disagreement with the rulings of the Superior Court judge. The fact that a judge has ruled adversely to a party does not establish that the judge was biased.[27] Williams has not identified anything in the record to support his claim that the Superior Court judge was biased against him or engaged in judicial misconduct.

(33) This Court has reviewed the record carefully and has concluded that Williams's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine

---

[26] *Guinn v. State*, 841 A.2d 1239, 1241 (Del. 2004).
[27] *In re Wittrock*, 649 A.2d 1053, 1054 (Del. 1994).

14

the record and the law and has properly determined that Williams could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:


/s/ James T. Vaughn, Jr.
Justice